|  UNITED STATES DISTRICT COURT  |
|  DISTRICT OF PUERTO RICO  |

| UNITED STATES OF AMERICA, | |
| Plaintiff, | Crim. No. 98-295 (JAF) |
| v. | |
| LUIS SANTANA MENDOZA, | |
| Defendant. | |

**O R D E R**

On August 19, 2008, we ordered the United States of America to show cause as to why we should not set aside the incarceration portion of the sentence of Defendant Luis Santana Mendoza. Docket No. 160. We held a hearing on September 18, 2008, Docket No. 166, and now set aside said portion of Defendant's sentence, for the reasons stated below.[1]

On May 16, 2000, Defendant pled guilty to one count of milk adulteration. Docket No. 134. We sentenced him to a total of one year in prison and three years supervised release, and granted voluntary surrender. Id. The First Circuit affirmed the sentence on January 10, 2002. United States v. Santana-Mendoza, 29 Fed. Appx. 613 (2002). On February 27, 2002, we extended the deadline for Defendant's voluntary surrender pending his motion for rehearing en banc, ordering Defendant to immediately turn himself over to the United States Marshals Service ("USMS") should the First Circuit refuse to hear the case. Docket No. 156.

---

[1] Despite having been subpoenaed to testify at the hearing, Deputy U.S. Marshal Wally Lorenzo failed to appear. The United States now submits an affidavit of Lorenzo's would-be testimony. Docket No. 174-2. Because Lorenzo did not testify at the hearing, we disregard the affidavit.

Criminal No. 98-295 (JAF)                                                -2-

In July 2002, Defendant visited USMS to inquire about his surrender. Docket No. 172-4. Lorenzo told him that he would receive written instructions by mail regarding the location and date on which he would be expected to surrender to begin serving his sentence. Id. The First Circuit denied Defendant's petition on August 2, 2002, Docket No. 172-5, but Defendant never received any information from USMS, Docket No. 172-4. To date, it appears that USMS has never contacted Defendant with information regarding his incarceration.

From August 2002 to the present, however, Defendant has remained under the supervision of the United States Probation and Pretrial Services Office ("PTSO"). Defendant has reported on a regular basis to PTSO and has complied with every condition placed upon him. Defendant has also remained gainfully employed, running a construction business building affordable housing units. He has complied with all of his tax obligations.

During the time that Defendant was reporting to PTSO, PTSO repeatedly contacted USMS for information regarding Defendant's incarceration. USMS consistently replied that the matter would be looked into and PTSO would be contacted with the information. Yet, USMS never contacted either PTSO or Defendant.

In early October 2005, Defendant was finally designated to serve his sentence at Metropolitan Detention Center, Guaynabo. However, it appears that USMS never provided this information to PTSO or to Defendant so that Defendant would be able to surrender himself. On October 17, 2005, PTSO contacted Lorenzo, who informed them that the designation had been canceled but resubmitted, and stated that he

Criminal No. 98-295 (JAF)                                                  -3-

would contact PTSO as soon as the new designation was received. Once again, USMS never contacted PTSO or Defendant.

In early June 2008, Defendant suffered a nervous breakdown requiring hospitalization. On June 19, 2008, Defendant was released from the psychiatric institution. Defendant is now receiving outpatient psychiatric treatment.

On August 13, 2008, PTSO moved for a sixty-day extension of time for Defendant to begin serving his sentence. In response, on August 15, 2008, the United States, through the U.S. Attorney's Office ("USAO"), asked that we order PTSO to submit more information regarding Defendant's psychiatric condition.

The Due Process Clause bars the government from requiring a defendant to serve a sentence when, through no fault of the defendant, the government fails to incarcerate the defendant or "delays incarceration . . . for an inordinate amount of time." Sanchez v. Warden, N.H. State Prison, 329 F. Supp. 2d 200, 203 n.3 (D.N.H. 2004) (citing cases). Delayed incarceration violates the due process rights of a defendant when the delay involves gross negligence by the government or other action that "shock[s] the contemporary conscience." See Bonebrake v. Norris, 417 F.3d 938, 943 (8th Cir. 2005) (quoting County of Sacramento v. Lewis, 523 U.S. 833 (1998)); Shelton v. Ciccone, 578 F.2d 1241, 1244 (8th Cir. 1978).

In the instant case, Defendant was sentenced to a one-year term of imprisonment over eight years ago. His appeal became final more than six years ago. During this time, Defendant not only resided openly and continuously in the same location, at an address on file with both PTSO and USMS, he also regularly reported to PTSO, located

in the same building as USMS. In addition, he reported to USMS to inquire about the details of his surrender and was instructed to await information which would be sent by mail. Defendant dutifully followed these instructions. PTSO further inquired on his behalf at regular intervals, but USMS continually failed to offer any information in response. It, thus, cannot be said that Defendant is in any way culpable for USMS' failure to incarcerate him. Rather, USMS needlessly prolonged the period during which Defendant was forced to remain in a state of uncertainty regarding where and when he would be incarcerated, and during which he was subjected to significant restraints on his liberty because he remained under the close supervision of PTSO.

The United States can offer no justification or legitimate governmental objective for this extreme lack of action on the part of the marshals. See Bonebrake, 417 F.3d at 943 (quoting Hawkins v. Freeman, 195 F.3d 732, 746 (4th Cir. 1999)). We find that the failure to execute Defendant's sentence for more than six years from the date his appeal became final was grossly negligent and was a clear abuse of power which infringed on Defendant's liberty and which rises to the level of a violation of his due process rights. See Shelton, 578 F.2d at 1245 (finding seven-and-a-half year delay prior to incarceration to violate the defendant's due process rights); cf. Bonebrake, 417 F.3d at 943 (distinguishing Shelton and finding no constitutional violation for four-year delay where Sheriff's office was unaware of defendant's location). Abuses of power such as those seen in this case serve only to undermine the integrity of the criminal justice system and cannot be tolerated.

Criminal No. 98-295 (JAF)                                                -5-

In addition, we find that Defendant has informally served a more than sufficient period of time under the supervision of PTSO to satisfy his sentence. To incarcerate Defendant at this time would serve none of the purposes embodied in the sentencing factors of 18 U.S.C. § 3553. Defendant committed a non-violent crime more than ten years ago. He has demonstrated that he is fully rehabilitated and is a productive member of society. He poses no threat to the community and we have no indication that he is at all likely to engage in future criminal conduct.

Accordingly, we **SET ASIDE** the incarceration portion of our May 16, 2000 Judgment, Docket No. 134.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 28th day of October, 2008.

```
                              S/José Antonio Fusté
                              JOSE ANTONIO FUSTE
                              Chief U.S. District Judge
```